We'll hear the next case, which is DULANEY v. TONEY. Good morning, Your Honors. May it please the Court, Rebecca Jones representing Petitioner and Appellant James Dulaney. This case represents two issues. One is that the state court used the wrong analysis in deciding the severance issue raised both in the state courts and on Petitioner's petition under 2254, and the second is that the district court used the wrong analysis in deciding the ineffective assistance of counsel claim. Both of those errors prejudice Petitioner require reversal of the order of the district court. In regard to the severance issue, the California District Court of Appeal got the issue wrong by heavily relying on Penal Code section 954.1 to avoid all consideration and discussion of the fact that cross-admissibility was a huge problem in the severance issue. It was argued extensively by the parties in the trial court level. And even though the state court opinion gives lip service to the consideration of cross-admissibility in the beginning of its opinion, it then points out that Penal Code section 954.1 actually prevents cross-admissibility in the severance issue. It prevents it from making a reversal based on lack of cross-admissibility and then fails to consider the lack of cross-admissibility whatsoever. It appears that there has never been a reliable argument that the Kimbrough, the attempted murder, I think it's actually more correctly characterized as an assault with a deadly weapon, evidence was admissible for any purpose in the Desmond murder. And the trial court essentially conceded that when it directed the jury not to consider the evidence at all. What's the Supreme Court case that your client contends was misapplied or unreasonably applied? Again, don't we have to determine that the state court made an objectively unreasonable application of some Supreme Court-determined law? That's correct, Your Honor. And I don't have a particular site in front of me, but it's all of the cases regarding just general due process. And when this Court has decided 2254 cases that raise a severance issue, such as Bean v. Calderon and Fields and Park, it's looked to general principles of due process. What's the Court's general precedence on severance? No, the Supreme Court, the Supreme Court, U.S. Supreme Court's never decided a severance case that's not based in the Federal Rules of Act. But it's really just general due process language that we're going back to. So it's the general fundamentally unfair consideration of evidence that's only admissible and only relevant and not unduly prejudicial, that sort of analysis that we really have to rely on here. And when you look at all of those things, you find that in this particular case, you have a stale attempted murder case that's joined together with a current and much more difficult to prove actual murder case. Apparently, looking back through the record a lot more carefully, only for the reason of linking these two brothers together in sort of a life of crime and linking my client, Petitioner James Delaney, to Rizal Delaney's world of pimps and drugs and prostitutes and shooting and drug deals. Because otherwise, there's no relationship between my client and that world beyond the fact that he's Rizal's brother. And if you think about it, the prosecution took they had my client's confession in 1998. They had eyewitnesses conceivably long before that when the actual shooting was reported to police, who put my client there. There's no reason why they couldn't have tried the Kimbrough case earlier. And they put the Kimbrough case into the Desmond case, knowing the risk that they were going to lose the statute of limitations, which they ultimately did in the middle of the trial. And I think, although there's obviously no district attorney saying on the record, well, we did this so that we could bring in this other evidence, it provided the prosecution with a crucial link between Petitioner and Rizal in this criminal behavior with drug dealing pimps and prostitutes in the world that Mr. Desmond was associating in before he was murdered. The reason I point out the Penal Code section 954.1 and the cross-admissibility issues is to point out to the court that that is the door through which we can get into the ADEPA analysis. I heard Judge Gould questioning the prior appellant about, well, you know, what about this deference in the state court opinions and things like that. Well, the state court opinion completely applied the law incorrectly in our particular case, because under federal law, under federal due process law, under this court's precedence addressing severance issues, cross-admissibility is a very important consideration. And the state court of appeal completely dodged that and declined to address it, relying on this California statute, which, of course, has no general obligation to comply with federal law. And even the magistrate judge who issued his report and recommendation in this particular case noted that Penal Code section 954.1 might present a constitutional problem. He says under different facts. I say under these facts. And although that's not a separate issue, it's certainly relevant to this court's consideration of the severance issue. It's also important to note that even though I did some discussion in my brief about the role of cautionary instructions and how you can't unring the bell, this case really looks an awful lot like Jackson v. Deno. In other words, I can't deny there's some cautionary instructions. Don't consider the Kimbrough evidence. And, of course, the state court opinion notes that Rizal's jury came back during deliberations and said, well, can we consider the Kimbrough evidence for stuff that's relevant? Now, my jury doesn't have that note, so I can't say that my jury did or did not do that. But it's certainly persuasive evidence that this is extraordinarily difficult evidence for a jury to disregard. And Jackson v. Deno says you can't ask a jury to pretend the defendant didn't confess to a crime after they've heard it. It's just you're asking them to do something that's humanly not possible. And that's what the trial court was doing here is asking the jury to pretend, oh, James Delaney never said that he shot this guy in the groin. You know, he never told a police officer that he did that. He never admitted to it. I realize Jackson v. Deno was with the crime on trial as opposed to a crime that had been severed, essentially severed out mid-trial. But it's still the same idea. To ask the jury to pretend they've never heard that evidence when you didn't have the same strength of evidence on the Desmond murders. What is the standard that we apply here if we're talking about due process? Is it just fundamental fairness? It's very hard for us up here to be looking at a trial that took place in the state court a long time ago. It is fundamental fairness, Your Honor, and I realize that that standard is just extraordinarily difficult to apply. And I have to say, in preparation for argument, I went back and looked through the other severance cases that this court has considered and there's nothing that looks like it. In Bean, which obviously I'd like this court to think my case looks most like, there was a huge, huge, huge discrepancy in the evidence between the two offenses. And the prosecutor argued the weaker offense in argument. I have a discrepancy and I have a discrepancy between a whodunit, which was the Desmond murder, and what is it, which is the other attempted murder. In all the other cases, there was either an acquittal on some counts that allowed this court to make a determination that the jury had compartmentalized the evidence, or there was essentially a concession or certainly very clear evidence that the evidence was cross-admissible. Here we have a virtual concession from the trial judge that the evidence wasn't cross-admissible, because he directed the jury not to consider the evidence for any purpose whatsoever, and we don't have any evidence of compartmentalization. In fact, quite the opposite if you look at the jury note from Rozelle's jury, which heard the same evidence on these particular issues. So all we can say is if you look at these other cases about what happened and you talk about fundamental fairness and you talk about the fact that the links between James Delaney and the Desmond murder were much more tenuous than the links between Rozelle. I mean, Rozelle was in it, he had a long-term relationship with this guy, he was clearly planning a drug deal with this guy, he was in the guy's house after he was dead and missing, he had his property, he tried to fence his property, and the evidence against James was these cross-admissible evidence, and most of those statements that he made to them weren't accurate, they didn't actually reflect what had happened during the Desmond murder. So I think when you look at the totality of the circumstances and try to figure out what the Kimbrough evidence gave the prosecution that was missing, it was linking James and Rozelle together in violent crime in the world of pimps and prostitutes together, which made it much easier for the jury then to accept that James was involved in the Desmond murder. The other issue is petitioner's ineffective assistance of counsel claim and the failure, essentially, the biggest problem I think is the failure of the district court to give him an evidentiary hearing on what are certainly credible allegations that there was a defense out there that his lawyer failed to present, and frankly, the allegation in the petition, although perhaps not as artfully phrased as a lawyer might put it, essentially, his lawyer failed to fully investigate it, too. He said she failed to procure the evidence and then failed to present the evidence. There's some evidence on the record that she knew about the injuries that might have led him to be incapable of participating in the crime. She questioned at least two witnesses about it, but then used no argument and presented no further evidence. And unfortunately, what happened here then is that the district court attributed tactical decisions to trial counsel without ever finding out whether trial counsel even thought about this for more than a second or had, for all we know, petitioner was knocking her in court saying, ask these witnesses these questions, and she didn't actually investigate the defense fully, or she actually investigated it fully and decided it was not a credible defense or not a reasonable defense to put on for all the reasons that the magistrate judge and then the district judge cited in their rulings below. But it was not correct for the district court to go ahead and say, well, these were all the tactical reasons without making an inquiry of whether the ---- Do you have anything that would indicate that the hand injury actually incapacitated him totally so he couldn't use the hand at all? For right now, all I have is the allegations in the petition, Your Honor. Petitioner didn't have access to appointed counsel to do his petition in the state courts, and he wasn't appointed counsel even though they asked twice in this case to develop his record in the district court here. So we have these allegations. He's locked up in the Arkansas supermax.  In this record, yes, he was able through his family to get some medical records that he transmitted both to the state court and to the district court. I thought the medical records didn't really show that he would be incapacitated six weeks after the injury. That's the argument that the appellee makes, Your Honor, and that the district court makes. The medical records are from two different medical visits. And there's nothing that we have after that. I have no idea if there's more that exists after that or not. The allegation in the petition is that there's more. At least as to those visits, they don't show ---- What do you think they show? I frankly find them very difficult to read. I've never had much luck reading nursing and physician's notes myself. There was something a little bit adverse about the fact that he had been shot in the hand in this prior episode, isn't there? I mean, I thought that was kind of pretty cruelly gang-related and it might not have been so hot to put it in. I disagree with Your Honor on that, but let me finish answering Judge Gould's question for just a second. Here's the problem. He clearly had a splint and a cast at some point. We don't have evidence on the record because the court didn't give the petitioner opportunity to develop as they should have, how long he had those on his hands, or whether he's right-handed or left-handed. And we don't even have a cause of death for Desmond, so we don't know how he could or might have been able to participate in the murder with those particular injuries. He was incapacitated to some extent. There was some testimony in the record that he needed to go to Arkansas because he was so incapacitated he couldn't work in a hotel any longer. But again, it's this absence of information that I don't think is attributable to the petitioner, but to the process that he was afforded that's problematic. Now, getting back to the adverse problems of gang stuff, when you're shot by gang members, does that mean you yourself are a gang member? I mean, I think for myself, I suppose that's a leap. There's some motivation for not wanting to put this before the jury, I would think. There's some potential motivation that way, but there's also a lot of... I mean, it's a pretty good bet that this might, a tactical consideration could have been made that they didn't want to... Well, I disagree with that, particularly because there already, I mean, she did bring out some of the aspect that he had been shot in the hands. She did bring it out from Stacey Villani and Sharmisha Gwinn. So she didn't just totally ignore it, she brought it up, and there was no cross-examination about, well, this was... I don't know, I suspect the prosecutor probably didn't even know at that point what the facts were, that you were shot by Mexican gang members in a bar. But California actually has some fairly strict law limiting the use of gang testimony, and there's a fair chance that the court would have excluded any inferences that petitioner was involved in a gang had the issue come up and been litigated in limine and the parties that actually made tactical decisions and choices about what's the best way to proceed. You've got allegations in the petition, but is there evidence from your client, like an affidavit or declaration, if he could do that, saying he was totally incapacitated? There was no affidavit that he made out that I know of that was presented to the courts. Since I was only appointed to represent him in the Ninth Circuit, it wasn't the point at which we could expand the record. I understand that, but if that's the record, then how can we say that on that issue there's an objectively unreasonable decision in the state court? I think that the court needs to remand the matter for further consideration. I think that the court needs to remand the matter for further evidence to allow him to develop the record to make the full decision on the Strickland claim. I think that that is really sort of the threshold that we have to get over. But I also think that the allegations supported by the testimony that was actually presented and supported by the medical records that demonstrate certainly that there were these injuries that were suffered by petitioner are enough that you have to wonder, and again, I've cited the alibi cases to the court in my brief, you can't just automatically say that trial counsel must have had a strategic reason for failing to put this on, that trial counsel had a duty to try to put on as much mitigation or alibi. And of course, there was a different alibi defense that was presented for petitioner at trial. So it wasn't inconsistent with that at all. So I think that the problem, the threshold problem is getting enough evidence before the district court to make the correct decision. And then I think after you get through that, then you get to the is it an objectively unreasonable application of Strickland. And I believe the court will go there as well. Okay. Thank you. Please, the court, Peter Kwan for the respondent. I'd like to, with the court's permission, I'd like to start with the medical evidence and then work backwards to the jointer issue. With regard to the medical evidence, what has not been presented either in petitioner's initial habeas to the district court, to this court, to the state court, even in the collateral proceedings, was what is going to be gained by having an evidentiary hearing than what is already presented in those medical reports. What this court sees from the medical reports is I find to be easily decipherable. First of all, a bullet hit the petitioner's right hand and lodged under the skin. It was removed. A bandage was put on the right hand. The left forearm was shattered by the bullet and a cast or something was put on the left arm. That happened in November of 1992, I believe. About six weeks before that. Correct. Yeah, six weeks before he committed the decapitation and murder of Desmond. That happened November 4 of 1992. November 9 of 1992, we had the appellant go back for further treatment to, we don't know whether it was a primary care orthopedic surgeon, but what we do know is that he was not prescribed any orthopedic device, remedy, or treatment. And the note that we have from the doctor was that it was healing well. The argument that I made in my appellee's brief was that a superficial bullet under the skin of the right hand, that's my left, my right hand, does not necessarily make that appellant incapable of committing a murder as an aider and abetter. And in California law, aider and abetter doesn't necessarily mean pulling a trigger. It could be of any sort to help facilitate, encourage the commission of the murder. Now, granted, what we have is the evidence from the appellant's statements to people in Arkansas when he was bragging about he and his brother Rozell, quote, offing the defendant, Mr. Desmond. And one of the statements that the appellant made was while he was playing with a gun and one of his relatives or something asked something about how he felt, he said it was like killing a person and the appellant responded it was like killing a dog. Rozell, the appellant's brother, told him to shut up, you speak too much. One of many several times in Arkansas that the appellant made statements like that connecting him to the Desmond murder where Rozell, his co-defendant, and also brother, told the appellant you talk too much. So I would submit that absent any showing by appellant at this point that an evidentiary hearing is going to present anything more than what we already have, that would be a benefit to them, precludes this court from ordering or finding that the district court improperly rejected the request for an evidentiary hearing. Is there a standard? I should know this. It comes up all the time. I know we have Ninth Circuit precedent with some standard about when a district court should have an evidentiary hearing, but is there any Supreme Court guidance on that or is it just the statute? You're talking about the United States Supreme Court, Your Honor? I'm going to have to rely also on the due process argument. Was the defendant denied some due process by the denial of an evidentiary hearing? Is there any prima facie showing that an evidentiary hearing would result in any relevant evidence? Thank you, Your Honor. If I may then go to the jointer issue. With respect to the jointer issue, my argument on appeal is that the cross-admissibility factor is not the exclusive reason or basis in which to find that the denial of a motion for severance should be found to be improper. What we have here is that the state court also found that the two cases, the Kimbrough shooting and then this Desmond murder, were of the same caliber, same kind. In fact, if anything, it was the opposite way that appellate wanted this court to interpret it, which was that the Desmond murder was more heinous, more brutal in fact, than the Kimbrough. Now, we also have below when the Kimbrough murder or charges were dismissed in trial, we have the trial court instructing the jury in this case not to consider that and also re-instructed not to consider those facts. But that still doesn't mean that the motion for severance was improperly denied. What we do have, again, and something that the state court below handled when the motion for severance came up was that, one, there was no spillover, there was no prejudice for combining the two, and two, that the two crimes were of the same class and committed by the same defendants. So I would submit that on the arguments I presented in my appellate's brief and any other questions that the court may have of me, that that is not a basis on which for the district court to have granted any habeas relief. Thank you. Thank you. Just very briefly, Your Honors, to answer Judge Gould's question, the leading case on when you need an evidentiary hearing is Townsend v. Sain. It predated ADEPA, but I believe 2254, I think it's sub D, but I'm not positive, the section that talks about when you get it, tried to incorporate a lot of Townsend v. Sain standards. Statutory standard under ADEPA is like the prior precedent. It's like the prior precedent. That's correct, Your Honor. In terms of the question raised by Appelli about what would be gained from an evidentiary hearing, the types of information I believe that we could glean at that point, and it might be presented by either side, is what trial counsel did or did not do to investigate this defense that she clearly knew about and why she decided not to put it on for a reason, if it was actually a decision made or not. We might get actual additional evidence about the nature and extent of petitioner's injuries on December 16th. In other words, there's many things that could have happened to his injuries between those medical reports that he was able to obtain for the state and federal courts and the actual date of the murder. I appreciate the job that you're doing. We appointed you, I guess, for this appeal. You did? I think, didn't we? You did? Yes, and you're doing a great job arguing this, but I don't see how we can say you get an evidentiary hearing because it's possible that he might have been hurt so, he might have been so injured that he couldn't have held the gun. If anybody knows that that is true, it would be him, wouldn't it? Well, it would be, and he alleged that in his petition now. The problem is we need to liberally construe pro per petitions, understanding that they may not know 100% of all the rules, and this is actually one of the better pro per petitions I think I've seen. Right, this is why we appointed you. If you look at civil pleading standards, he certainly made allegations that if true, our position would warrant relief. He has never been given an opportunity to develop the factual record while he's incarcerated 2,000 years away. It's an ineffective assistance of counsel because counsel doesn't put on this evidence, isn't it? Oh yes, yes, I've never tried to make the actual innocence argument. But the problem is that the state court, when you file these things in the California Supreme Court, they fairly routinely give you the little postcard denial and don't even ask the other side to make a determination whether there's a dispute over the factual issues. And so there's no development at the state level, and there's legitimate claims brought into federal court that then aren't fully developed. Finally, if we, again, the allegation from the petition is if we had an evidentiary hearing, we would be able to get the treating physician's opinions about petitioner's ability or disability, because that's not the reason that those documents were generated the first time around. It was just to actually document whatever it was that the treating physicians were doing on those particular dates and time. So with those final comments, Your Honor, I thank you very much and ask you to reverse the district court. Thank you.
judges: Schroeder, Gould, Clifton